# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF GEORGIA ATLANTA DIVISION

| | |
|---|---|
| JULIE JACKSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No: 1:21-CV-04706-MLB-CMS |
| V. | ) |
| | ) JURY TRIAL DEMANDED |
| ACCELERATE 360, LLC, | ) |
| | ) |
| Defendant. | ) |

# COMPLAINT

Plaintiff **Julie Jackson** ("Jackson" or "Plaintiff") brings this civil rights action for relief and damages against Defendant **Accelerate 360**, **LLC** ("Accelerate 360" or "Defendant") based on the following allegations and causes of action:

1

## NATURE OF THE ACTION

1.  This action arises under Title VII of the Civil Rights Act of 1964 ("Title VII") as amended, 42 U.S.C.A. § 2000e *et seq.*, to correct unlawful employment practices based on sex and retaliation. Plaintiff alleges that she was subjected to sexual harassment by an upper-level management figure while employed by Defendant, and that when she reported this discriminatory conduct, she was subjected to retaliation and soon after terminated. Plaintiff seeks economic damages, including back pay, noneconomic compensatory damages, and punitive damages, as well as attorneys' fees and costs of litigation. Plaintiff also petitions the court for injunctive relief enjoining Defendant from maintaining a workplace where employees are subjected to a hostile environment based on their sex, and from discharging employees for engaging in protected activity.

## THE PARTIES

2.  Plaintiff Jackson, an African American female, is a resident of Georgia. During the time of the events alleged in this complaint, Jackson was

employed by Defendant at its corporate headquarters at 1955 Lake Park Drive in Smyrna, Georgia, which is located in Cobb County.

3. Accelerate 360 is a worldwide media company specializing in sales, distribution, logistics, and data collection. It is the largest wholesale magazine distributor in North America and owns more than 30 media brands, including the National Enquirer, US Weekly, and Men's Journal. The company employs well over 15 persons.

4. Accelerate 360 is an employer covered under Title VII in that it is engaged in an industry affecting commerce pursuant to 42 U.S.C.A. § 2000e(b), (g), and (h).

**SUBJECT MATTER JURISDICTION AND VENUE**

5. Jurisdiction of this court is invoked pursuant to 28 U.S.C.A. §§ 1331 and 1343.

6. Venue is proper in this district and division under 28 U.S.C.A. § 1391 as Defendant conducts business, and the alleged unlawful acts occurred, in this district and division.

## PERSONAL JURISDICTION

7. Defendant may be served with process concerning this civil action in accordance with Fed. R. Civ. P. Rule 4.

8. Defendant may be served with process concerning this civil action through its registered agent on record with the Georgia Secretary of State: C T Corporation System, at 289 S. Culver St., Lawrenceville, GA 30046-4805.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

9. Jackson filed a charge of sex discrimination and retaliation against Accelerate 360 with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 420-2021-03531, on April 19, 2021. A copy is attached as Exhibit A.

10. The EEOC issued Jackson a Right to Sue letter on October 20, 2021. A copy is attached as Exhibit B.

11. Jackson timely files this action within 90 days of the issuance of a Right to Sue letter.

12. All administrative remedies have been satisfied prior to the filing of this civil action.

## FACTUAL ALLEGATIONS

13. In September 2020, Jackson was hired as a sales manager for Accelerate 360. Her duties involved handling customer orders for media inventory and managing the delivery of products to distribution centers.

14. Jackson's employment letter explicitly states that she would work primarily remotely, spending only "occasional days in the Smyrna central office." Jackson worked out an arrangement in which she would report to the office two days a week, subject to scheduling changes approved by one of her supervisors.

15. Jackson reported directly to two senior-level company officials: Mike Hornigold, the Executive Vice President of Digital Operations, and John Perner, the Senior Vice President of Sales.

16. On the days Jackson worked out of the Smyrna central office, she regularly encountered Perner. From the early weeks of her employment, Perner, a white male, demonstrated an unprofessional level of interest in Jackson, telling her that he found her attractive, that certain outfits she wore were appealing to him, and often staring at Jackson in a manner that made her feel objectified and profoundly uncomfortable.

17. Perner also made various blatantly offensive, sexually tinged remarks to Jackson. On several occasions, he commented on his sexual affinity for black women and made vulgar references to sex acts he claimed to have engaged in with black women.

18. Jackson made it clear to Perner she had no sexual interest in him and found his behavior, as a married man and as a senior executive who supervised her work, to be entirely inappropriate.

19. As Jackson rebuffed Perner, his behavior toward her started to become hostile and verbally abusive. He began to find fault with aspects of her work, often

reproaching her with a raised voice. He would switch back and forth between this abusive approach and sexual innuendo and bravado aimed at Jackson.

20. Jackson sought advice from colleagues as to how to deal with Perner's persistent mix of harassment and bullying. Several employees discouraged her from reporting Perner on the grounds that he had "too much power" at Accelerate 360 and that she would only be risking her employment.

21. On March 1, 2020, Jackson found herself alone with Perner in a merchandise storage room. Perner stunned Jackson by forcibly touching her, thrusting the front of his body against her hips while she was lifting some items; It took Jackson's scream to stop this assault from escalating.

22. Jackson immediately reported this forcible encounter to Hornigold, her other direct supervisor, who instructed her to meet with him and Perner the next day in person.

23. Jackson fully expected the focus of this meeting would be her reporting of a forced physical encounter with Perner. Instead, the two men admonished her with complaints about her handling of her job as a sales manager,

and threatened her with termination unless she consented to sign a performance improvement plan on the spot. Prior to this meeting, Hornigold had effusively praised Jackson's work and she had recently received a bonus based on her success as a sales manager.

24. To underscore the intimidation, as the meeting ended, Hornigold derisively told Jackson, "Now that you understand your new reality, we can go on from here."

25. At no point during the March 2 meeting was Jackson's reporting of Perner's harassing and assaultive conduct acknowledged or addressed by Jackson's two supervisors. Nor was Jackson subsequently contacted by the human resources or legal departments with which Hornigold should have shared her allegations, and which would have been tasked with investigating potential misconduct by an employee.

26. On March 9, 2021, Jackson sent an email to a group of central office staff and executives stating that she had been subjected to a pattern of verbal abuse,

mistreatment, and sexual harassment by Perner, and describing the intimidation she experienced in the March 2 meeting.

27. Two days after the group email, on March 11, 2021, Jackson was abruptly informed by the Executive Vice President of Human Relations, Mike Rogge, that she was being terminated for not reporting to the office on March 9 or March 11.

28. In fact, Jackson had obtained permission from Hornigold to work from home on both March 9 and March 11. In no way was her absence unexcused, and Jackson had routinely been given leeway to alter her in-office schedule with supervisory approval.

29. Jackson's sudden firing came within nine days of her reporting to a management-level figure that she was the victim of a forced physical encounter and had been sexually harassed, and within two days of a widely distributed email from Jackson to company employees alleging sexual harassment and mistreatment.

## COUNT I

**(Hostile Work Environment in Violation of Title VII)**

30.     Plaintiff incorporates by reference all the preceding paragraphs of this complaint as though set forth fully and separately herein.

31.     Plaintiff was subjected to harassment on the basis of sex repeatedly during her employment by Defendant.  She was constantly propositioned and forcibly touched by a senior corporate officer to whom she reported and who functioned as one of her direct supervisors.

32.     The harassment Plaintiff experienced was so severe and pervasive that it altered the terms and conditions of her employment and created a discriminatorily abusive work environment.

33.     Higher-level management officials employed by Defendant acted with malice or with reckless indifference to Plaintiff's federally protected rights.  *See* 42 U.S.C.A. § 1981a (b)(1).

34.     As a result of Defendant's discriminatory actions, Plaintiff has suffered monetary damages, including but not limited to back pay; and

noneconomic compensatory damages, including emotional distress, humiliation, embarrassment, and mental anguish.

## COUNT II
### (Retaliation in violation of Title VII)

35. Plaintiff incorporates by reference all the preceding paragraphs of this complaint as though set forth fully and separately herein.

36. Defendant retaliated against Plaintiff for engaging in protected activity in violation of 42 U.S.C.A. § 2000e-3(a).

37. Because Plaintiff engaged in protected activity in the form of making internal complaints regarding sexual harassment, she experienced materially adverse retaliatory actions by Defendant that well might have dissuaded Plaintiff from making or supporting a charge of discrimination, including an unjustified performance improvement plan, threatened termination, and subsequent actual termination on pretextual grounds.

38. As a result of Defendant's retaliatory conduct, Plaintiff has suffered monetary damages, including but not limited to back pay and noneconomic

damages, including emotional distress, humiliation, embarrassment, and mental anguish.

39. Higher-level management officials employed by Defendant acted with malice or with reckless indifference to Plaintiff's federally protected rights. *See* 42 U.S.C.A. § 1981a (b)(1).

## **PRAYER FOR RELIEF**

Wherefore, based on the above-stated claims, Plaintiff demands a trial by jury and that all the following relief be granted:

A. Back pay.

B. Compensatory damages to the extent allowed by law.

C. Punitive damages.

D. Attorneys' fees and costs of litigation.

E. Pre-judgment and post-judgment interest at the highest lawful rate.

F. A permanent injunction enjoining Defendant and its employees or agents from maintaining a hostile work environment based on an

employee's sex and/or from discharging an employee for engaging in protected activity.

G. A declaratory judgment that Defendant's actions violated Plaintiff's rights under Title VII.

H. Such other equitable and monetary relief as the Court deems just and proper.

Respectfully submitted, this 15th day of November, 2021.

**HKM Employment Attorneys LLP**
*s/Artur Davis*
Artur Davis
2024 3rd Ave. North, Suite 307
Birmingham, AL 35203
Direct: 205-881-0935
adavis@hkm.com
Jermaine "Jay" Walker
3355 Lenox Road NE, Suite 705
Atlanta, GA 30326
Direct: 404-301-4020
jwalker@hkm.com

**Counsels for Plaintiff**

13